

FILED
NOV 27 2013
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Robert S. Davidson, d/b/a PlasterTech,

    Plaintiff,

vs.

The United States of America, and
The United States Postal Service,

    Defendants.

No.: 13-942 C

## COMPLAINT

Plaintiff Robert S. Davidson, d/b/a PlasterTech ("Davidson"), by and through his attorneys of record, the law firm of Pisanelli Bice PLLC, hereby states as his Complaint against Defendants The United States of America and The United States Postal Service (the "USPS") (together, the "Defendants") alleging as follows:

### NATURE OF THE ACTION

Davidson spent over a year tirelessly designing and crafting his artistic vision of what is perhaps the most recognizable symbol of the Unites States of America, the Statue of Liberty. When done, Davidson's sculpture brought a new face to the iconic statue – a face which audiences found appeared more "fresh-faced," "sultry" and even "sexier" than the original located in New York. These same marked distinctions caused the USPS to purchase and use an unauthorized photograph of Davidson's sculpture in a new issue of First-Class Postage Stamps, referred to as the "Forever" stamp. In doing so, however, Defendants infringed upon Davidson's exclusive rights and privileges under the United States' Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act").

## JURISDICTION AND VENUE

1. This is an action for copyright infringement arising under the Copyright Act, 17 U.S.C. § 101 *et seq.*

2. This Court has exclusive jurisdiction and venue over this action pursuant to 28 U.S.C. § 1498(b).

## PARTIES

3. Davidson is an artisan who works and resides in Las Vegas, Nevada. At all times relevant hereto, Davidson operated as a sole proprietorship under the trade name PlasterTech.

4. The United States of America and the USPS are named as Defendants in this action in accordance with 28 U.S.C. § 1498(b) and have waived any sovereign immunity for this action.

## GENERAL ALLEGATIONS

5. Upon information and belief, in or about 1994, plans were conceived for the creation of a New York City-themed hotel-casino on the prime corner of Tropicana Avenue and Las Vegas Boulevard in Las Vegas, Nevada – the heart of the world-famous Las Vegas Strip.

6. The concept called for the exterior of the hotel-casino to resemble the New York City skyline, complete with recreations of famous buildings and certain landmarks, including the Statue of Liberty (the "NY Statue"). The hotel-casino would be called the "New York-New York Hotel & Casino" (the "Hotel").

7. Upon information and belief, a Las Vegas-based contractor, Marnell Corrao Associates ("Marnell "), was hired as the general contractor for the project.

8. Upon information and belief, in or around 1995, Marnell hired Recreation Development Corporation ("RDC") as subcontractor to create the New York City skyline-inspired exterior of the Hotel.

9. RDC knew that it needed a highly skilled sculptor to design and create a modern version of the NY Statue. RDC found that highly skilled sculptor in Davidson, the same person RDC knew previously sculpted the face of the Great Sphinx of Giza at Luxor Las Vegas.

10.    On October 26, 1995, RDC retained Davidson as an independent contractor to sculpt the new statue which would become a fixture on the famous Las Vegas Strip (the "LV Statue").

### *Davidson's Creation of the LV Statue*

11.    The LV Statue is the vision of one artist, Robert Davidson.

12.    Although Davidson was bound by loose height, width and depth requirements to accommodate the underlying structural steel, he was given free creative license to sculpt his own interpretation of the NY Statue.

13.    Davidson viewed photographs of the NY Statue as inspiration for the LV Statue, but developed many aspects of his sculpture without referring to any existing works. Indeed, Davidson never visited the NY Statue nor referred to its exterior dimensions, other than total height, in preparation for sculpting the LV Statue. Instead, Davidson principally relied upon a self-made maquette of his vision to guide him in sculpting the 102-foot-tall LV Statue.

14.    Davidson began work on the LV Statue on or about September 26, 1995.

15.    Davidson first laminated multiple layers of rigid polystyrene over the LV Statue's steel framework from which he could sculpt.

16.    Davidson then used hand-held tools — namely, sculpting wands, hot foam cutters, hand saws, and rasps — to precisely sculpt the shape and form of the LV Statue.

17.    Davidson finally applied multiple layers of an integrally colored plaster mix of white cement, acrylic base coat, and reinforcing mesh to add color and ensure the LV Statue would withstand the test of time.

18.    Davidson worked in 7-foot 6-inch increments due to the size of the LV Statue.

19.    Davidson completed the LV Statue on October 4, 1996.

20.    As the United States Copyright Office would later determine, "there are substantial differences between the original structure in New York and the Lady Liberty structure" in Las Vegas, including, but not limited to:

  a. *Silhouette:* The LV Statue features a softer, more feminine and realistic silhouette than the NY Statue. The specific, artistic differences embodied in the silhouette of the LV Statue include, but are not limited to: the placement, size, and pattern of the robe folds; the angle, positioning, and length of the upraised arm and hand; and less muscle definition and softer sinews of the upraised arm of the LV Statue.

  b. *Face:* The LV Statue depicts a more feminine visage than the NY Statue, and lacks the sharp, angular features of the NY Statue. This was by design, as Davidson was inspired by certain facial features of his close female relatives. The specific, artistic differences embodied in the face of the LV Statue include, but are not limited to: a fuller chin; a rounded jawline and neck; a softer and wider mouth in relation to the nose; lifted corners of the mouth to create a friendlier expression; a pronounced cupid's bow shape of the upper lip; a fuller and slightly pouty lower lip; a rounded nose tip, that is flatter, wider, and slightly upturned; larger, more rounded nostrils; a thinner nose bridge; rounded, less prominent ears and ear lobes; pronounced eyebrows, with enhanced definition at the bridge of the nose; a shorter, less pronounced forehead; more defined eyes and eyelids, with the eyes looking more outward and upward; a left eyelid that is slightly higher and has a tighter radius than the right eye; lower eyelid furrows that are rounder and softer; and texture, placement, and detailing of the hair across the forehead and above the ears, creating a tidy, well-groomed appearance.

  c. *Crown:* The crown of the LV Statue displays a façade depicting viewing windows because, unlike the NY Statue, the crown of the LV Statue does not include an observation deck. The crown of the LV Statue also features a rectangular commemorative plaque affixed to the front base of the center point, which dedicates the LV Statue to Davidson's mother-in-law, who died during its creation. The commemorative plaque is depicted below:



21.     The New York Times called the LV Statue "much pout-ier," "far more sultry, and, frankly, sex[ier]" than the NY Statue.[1]

22.     Reuters wrote that the LV Statue "looks more fresh-faced."[2]

23.     Indeed, it is this new fresh face that would later prompt the Defendants to prefer and exploit Davidson's design for their own economic gain.

### *Davidson's Copyrights*

24.     Although never publicly recognized for his creation and design, Davidson owned and retained all rights and privileges under the Copyright Act as the sole author of the LV Statue.

25.     Davidson affirmed his exclusive rights and privileges in and to copyrights related to the LV Statue by registering his work in the name of his sole proprietorship, PlasterTech, with the United States Copyright Office, Registration Nos. VAu 1-090-876 and VA 1-882-070.

### *The USPS's Infringement of Davidson's Copyrights*

26.     Upon information and belief, at an unknown date, a photographer named Raimund Linke ("Linke"), without permission or authorization from Davidson, photographed the LV Statue (the "Infringing Image") and then uploaded the Infringing Image for sale on the stock photography website Getty Images.

27.     The Infringing Image was titled "Lady Liberty," and described with keywords such as "Las Vegas," "Nevada," and "Replica Statue of Liberty – Las Vegas" to advertise on the Getty Images website.

28.     Upon information and belief, at an unknown date, Defendants, through the USPS, purchased the Infringing Image from Getty Images to be used as the artwork in the new issue of its USA first-class, "Forever" postage stamp (the "Infringing Stamp"), which is depicted below:

---

[1] New York Times, "The Statue of Liberty Holds Its Own Against Las Vegas Facsimiles," http://www.nytimes.com/2011/04/16/nyregion/liberty-statue-in-las-vegas-stands-among-many-replicas.html?_r=0.

[2] Reuters, "Oops! Statue of Liberty stamp shows Las Vegas lady," http://www.reuters.com/article/2011/04/15/us-stamp-mixup-idUSTRE73E6BO20110415.



29. Upon information and belief, beginning on or about December 1, 2010, Defendants, through the USPS, printed and issued approximately 4 billion copies of the Infringing Stamp in the United States, which quickly became one of the most popular stamps of all time.

30. Upon information and belief, beginning on or about December 1, 2010, Defendants, through the USPS, also sold related merchandise and items bearing the Infringing Image and/or Infringing Stamp in the United States.

31. Upon information and belief, in or about March 2011, Defendants, through the USPS, were notified that the Infringing Image used in the Infringing Stamp was that of the LV Statue, not the NY Statue.

32. Defendants, through the USPS, publicly confirmed there was an "error" in how the Infringing Image was labeled on the Getty Images website, but explained there was "no error in the artwork."

33. According to the USPS, it "wanted to do something different[ ]" from the other 23 stamps that featured the NY Statue, and the USPS fell in "love" with Davidson's "treatment" and "design" of the LV Statue. Thus, according to the USPS, it "would have selected this photograph anyway."

34. Upon information and belief, Defendants, through the USPS, determined that it was in their financial best interest to continue to infringe upon Davidson's rights, as the cost to discontinue the infringing activity exceeded the marginal cost of royalties that they knew or should have known were owing.

35. Upon information and belief, on or about September 14, 2011, Defendants, through the USPS, printed and issued approximately 1.125 billion additional copies of the Infringing Stamp in the United States.

36. Upon information and belief, Defendants, through the USPS, continue to sell the Infringing Stamp and related merchandise and items bearing the Infringing Image and/or Infringing Stamp, without Davidson's permission or authorization.

### FIRST CLAIM FOR RELIEF
(Copyright Infringement in Violation of 17 U.S.C. § 101 *et seq.*)

37. Davidson incorporates the allegations in the preceding paragraphs as if fully set forth herein.

38. The LV Statue is substantively and inherently different from the NY Statue, and is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

39. Davidson is, and at all times relevant hereto has been, the exclusive owner of all rights and privileges related to the LV Statue under the Copyright Act, 17 U.S.C. § 101 *et seq.*

40. Defendants' unauthorized use of the Infringing Image and sale of the Infringing Stamp and related merchandise and items in the United States constitutes infringement of Davidson's exclusive rights and privileges under the Copyright Act, 17 U.S.C. § 101 *et seq.*

41. Davidson has not consented to Defendants' infringing activities.

42. By reason of the foregoing, Davidson has sustained and will continue to sustain substantial injury, loss and damage to his exclusive rights in the copyrighted work, including lost sales, lost royalties, and loss of reputation and value of attribution.

43. Davidson is entitled to recover reasonable and entire compensation from Defendants as damages for said acts of copyright infringement.

44. Davidson is, at present, unable to ascertain the full extent of the amount of reasonable and entire compensation, but is informed and believes that Defendants, through the USPS, have sold and received billions of dollars from stamps, merchandise and other items bearing the Infringing Image and/or Infringing Stamp.

## PRAYER FOR RELIEF

WHEREFORE, Davidson respectfully prays that judgment be entered against the Defendants in an amount sufficient to provide reasonable and entire compensation after an opportunity to conduct discovery, but in no event less than the fair market value of a license for the full scope of Defendants' infringing use of the Infringing Image.

Respectfully submitted,

PISANELLI BICE PLLC

By: _____  11-26-2013
James J. Pisanelli, Esq. (*Attorney of Record*)
JJP@pisanellibice.com
Todd L. Bice, Esq.
TLB@pisanellibice.com
Debra L. Spinelli, Esq.
DLS@pisanellibice.com
Eric T. Aldrian, Esq.
ETA@pisanellibice.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Telephone: (702) 214-2100
Facsimile: (702) 214-2101

*Attorneys for Plaintiff Robert Davidson,
d/b/a PlasterTech*