# In the United States Court of Federal Claims

No. 13-942C
(Filed: August 27, 2018)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ROBERT S. DAVIDSON

                  Plaintiff,

v.

THE UNITED STATES,

                  Defendant,

Copyright infringement; Pre-judgment interest; delay compensation.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER REGARDING PRE-JUDGMENT INTEREST

On June 29, 2018 we ruled that plaintiff was entitled to compensation for the government's infringement of his copyright in a statue modeled after the Statue of Liberty. A photograph of the statue was used by the Postal Service in one of its stamps. We held that the plaintiff's work was original and that the government's use was not fair and concluded that plaintiff was entitled to a flat fee and a running royalty in the total amount of $3,554,946.95, plus interest. We reserved the question of how to calculate interest. The parties presented their views on that issue in a July 27, 2018 status report. A status conference regarding the issue was held on August 22, 2018.

Plaintiff is entitled to both pre and post-judgment interest as elements of just compensation for the government's unauthorized use of his intellectual property. *Gaylord v. United States*, 678 F.3d 1339, 1345 (Fed. Cir. 2012). The purpose of delay compensation is to place the copyright holder "in the economic position it would have held had royalties been timely paid[.]" *Brunswick Corp. v. United States*, 36 Fed. Cl. 204, 218-19 (1996).

The parties agree on the use of December 1, 2010, as the date of initial infringement. They also agree that pre-judgment interest should end on September 1, 2018, and that it should be compounded annually. Post-judgment interest at the statutory rate applies thereafter. 28 U.S.C. § 1961(a) (2012). They disagree, however, on the rate of pre-judgment interest and whether it applies on the entire principal amount from the date of first infringement. Plaintiff argues that the entire amount earns interest from December 1, 2010; defendant proposes that interest should only be applied to the revenue from the infringing stamps sold in a given year.

Plaintiff did not offer any evidence at trial concerning an appropriate interest rate or how it should be calculated. Instead, it argues for use of a statutory rate applicable to judgments in Nevada, where Mr. Davidson lives, which is based on the prime rate at the largest bank in Nevada, plus 2%. At the relevant time the rate was 5.45%. Alternatively, plaintiff asks for interest to be calculated based on the average prime rate between infringement and judgment, which is 4.13%. Mr. Davidson submitted an affidavit, which describes his approach to investment, in support of his contention that he should not be expected to have invested in low rate government bonds. Defendant's expert, Mr. Bokhart, proposed the seven-year Treasury rate as of December 1, 2010, which was 2.33%. He used seven years as the bond term closest to the nearly eight years between initial infringement and judgment.

We decline to use either of plaintiff's proposed rates. We find no support for rates based on the serendipity of where Mr. Davidson lives. Money is fungible and interest rate judgments should be based on larger factors. In addition, both the prime rate and Nevada statutory rate based on typical civil judgments introduce an element of risk compensation that we do not believe enters the calculus here. Courts have relied on a variety of rate sources, but the principal object is to reimburse the plaintiff for the time value of money. With the government as the infringer, plaintiff is assured of being compensated; he is not at risk of not being paid. Nor is it appropriate, in our view, to consider plaintiff's unique investment history or expectations. The government's infringement could not be anticipated, nor was plaintiff marketing his intellectual property at the time.

We believe the government's proposed seven year Treasury rate is appropriate. It reflects the time value of money and certainly for this period of time is more generous than a short-term rate, which other courts have used.

Our selection of that rate is also reflective of our use of a single date for calculating all interest, as explained below.

With respect to whether to break the principal amount out over time, we note that the government's contention that interest should commence only insofar as stamps were sold is somewhat at odds with fixing the appropriate rate as of December 1, 2010, something the parties agreed to. As between the two approaches, we are more comfortable with the use of a fixed date of infringement as the case was tried on that theory and the hypothetical negotiations presume a single agreement. We note moreover that the actual sales did not fall neatly into annual tranches that line up with annualized interest payments. They occurred throughout the first few years, however, and were heavily front-end loaded. The bulk of sales occurred within the first year and virtually all sales took place within the first two years of infringement. We agree with plaintiff as well that the Postal Service's practice of booking immediately its "profits" from anticipated retention militates against any unfairness in this approach. Finally, our willingness above to use the more conservative Treasury bond approach reflects our willingness to use a single fixed date for calculating all the principal amount. Plaintiff receives some benefit from the fact that some of the running royalties would in fact have been delayed by one to two years but that is not unfair given our use of a relatively conservative Treasury rate.

The parties are directed to consult and attempt to agree on the amount of judgment, including accumulated pre-judgment interest through September 1, 2018, using the seven-year Treasury bill rate on December 1, 2010. Their status report is due on or before August 30, 2018. Defendant's motion to strike Mr. Davidson's declaration is denied as moot.

s/Eric G. Bruggink  
ERIC G. BRUGGINK  
Judge